Hardy L. PASCHAL, Plaintiff-Appellant,

v.

FLORIDA PUBLIC EMPLOYEES RELATIONS COMMISSION, et al., Defendants-Appellees.

No. 81–5258
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Feb. 1, 1982.

Hardy L. Paschal, pro se.

Irving Weinsoff, Miami, Fla., for defendants-appellees et al.

Patricia A. Renovitch, Gen. Counsel, Tallahassee, Fla., for Florida Public Emp. Relations Commission.

Susan E. Trench, Asst. County Atty., Miami, Fla., for Metropolitan Dade County.

Before GODBOLD, Chief Judge, JOHNSON and ANDERSON, Circuit Judges.

PER CURIAM:

In this case the plaintiff Hardy Paschal claims that he was discharged from his employment with Dade County (Florida) in violation of the United States Constitution. A jury returned a verdict for defendants. We affirm.

Plaintiff was employed for six years as a social worker with the Dade County Welfare Department. In mid 1975 the department director issued "directive # 7" which placed limits on the amount of mileage reimbursement employees could seek. Paschal was then a union steward. A major portion of his and co-workers' duties involved home visits in their own automobiles to welfare recipients. Paschal complained to the department director about the mileage reimbursement limits. When directive # 7 was not rescinded Paschal refused to continue to use his own automobile for work assignments and requested a transfer to an "intake position," one not requiring transportation. This request was refused and Paschal was warned of termination unless he continued to perform his prior assignments. Paschal complained to his union, and an agreement was reached with the department that Paschal would be considered for transfer when an intake position became available.

Paschal continued to use his own automobile in his work for the next two and one-half years. He consistently reported excessive mileage. He was twice given unsatisfactory evaluations and was refused merit raises. In July 1977 Paschal tendered his resignation, citing these difficulties, but when the department agreed to transfer him to a different supervisor and grant him a retroactive pay increase Paschal agreed to stay on.

At the end of 1977 Paschal's automobile was repossessed. He informed his supervisor that he would be unable to continue his present work involving home visits. He was told to obtain another car. When Paschal did not he was given the choice of being terminated or submitting his resignation. February 9, 1978 Paschal opted to resign, and his employment ended March 31. Two months later he was told in writing that he was asked to resign because of his inability to perform his duties and to give any assurance of a probable date for acquiring another automobile.

Proceeding *pro se*, Paschal brought suit in district court on November 23, 1979 against Dade County, the Florida Public Employees Relations Commission (PERC), and his union, alleging violation of Florida labor law, federal labor law, and his constitutional rights. The complaint was dismissed with leave to amend. With some coaching from the court, Paschal submitted a properly pleaded complaint May 8, 1980 against his union and Dade County, restricted to federal labor law and his constitutional rights. The district court dismissed the labor law count. The constitutional count is set out in the margin.[1]

A pretrial conference was held January 30, 1981 at which a trial date was set for the week of February 9. During this conference Paschal for the first time informed the defendants and the court that he intended to pursue a due process theory as well as a first amendment theory. The district judge informed Paschal that his complaint did not set forth a due process count, but told Paschal that he would consider him to have made an oral request for leave to amend and would allow him to file a written motion to amend. The court further explained:

Now, I will tell you what you do, Mr. Paschal. You think about whether or not you want to seek to amend and I am going to check the statute of limitations for you. If the statute of limitations has run, we are going to give you every opportunity to sue the County here.... If the statute of limitation has not run, we are going to try this one [first amendment theory] and get it over with, so let's look into that situation first thing and I am not going to let him bring it if I determine from checking certain matters that he is just wasting his time. But, if he has some legitimate position under the law on it and the statute has run, we are going to let him amend his complaint.

Paschal never filed a written motion to amend, and then on the day of trial the court denied the oral motion without explanation. The jury rejected Paschal's first amendment theory.

Paschal challenges the district court's ruling that his complaint did not set forth a due process theory, the court's denial of leave to amend, and the court's refusal of a judgment notwithstanding the verdict. We affirm.

■ Under Paschal's due process theory his procedural due process rights were violated because he was forced to resign without being given a hearing or a written

---

1. That as for the Plaintiff's claim for relief against Defendant Metropolitan Dade County for unlawfully discharging Plaintiff for the exercise of his First Amendment rights; Plaintiff alleges that he was unlawfully discharged from employment for his opposition and the attack on the attached Dade County Welfare Department Director's Directive # 7, dated June 6, 1975, as it related to fairness of mileage reimbursement practices toward field social workers of the Welfare Department.

Plaintiff further alleges that by being union steward that his union activities were protected under Article 12 of the attached then union contract which provides "in no event shall the Department layoff, discharge or discriminate against a steward for action taken in the proper performance of his duty as a steward." And that it was Plaintiff's duty to investigate and process grievances for fellow employees. That the Director's Directive # 7 was in fact a grievance. And that the Plaintiff was discharged for the performing of his duties as union steward. Duties protected in the First and Fourteenth Amendments of the United States Constitution.

statement of reasons. We agree with the district court that this theory is not stated in Paschal's complaint, even under the liberal reading that is given to *pro se* complaints. Nowhere does Paschal's complaint mention that Paschal was forced to resign without a hearing and a written statement, or allege that he was due this process. Although the fourteenth amendment is mentioned once, this is only in the context of contending that it protects Paschal's duties as a union steward by its incorporation of the first amendment, a substantive due process theory. No mention is made of rights to procedural due process or of the allegation that no pre-resignation hearing was given.

■ "Review of a district court's denial of leave to amend is limited to a determination of whether the court abused its discretion. [Citations] ... [I]n deciding whether to grant leave to amend the district court must take into account several factors 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.' [Citations] The district court may also consider whether undue prejudice to the movant will result from denying leave to amend." *Bamm, Inc. v. GAF Corp.*, 651 F.2d 389, 391 (5th Cir. 1981). We cannot say that the district court abused its discretion in this matter. The case was more than a year old and discovery had ended when the motion to amend was made. No excuse is given for this delay. The district court had shown great solicitude for plaintiff's difficulties in proceeding *pro se* by allowing a prior amendment and by instructing him on how to properly plead. The pleadings gave no indication of the due process theory, the motion to amend was not made until shortly before trial, and the court considered that it would have to order a continuance to avoid causing prejudice to the welfare department. Finally, the court

inquired into whether Paschal would suffer prejudice if he could not amend. The court indicated that it would grant the motion if Paschal had a legitimate "position" and if the statute had run. It is not revealed which of these two was lacking or whether both were. On appeal Paschal contends that he has a legitimate "position," but he does not discuss whether the statute had run or whether he was otherwise precluded from asserting his claim in another suit. Therefore, Paschal makes no clear showing of prejudice.

To summarize these various factors, there was unjustified delay coupled with some prejudice to the defense; there is no evidence of bad faith or a dilatory motive. We think this is enough to justify the district court's ruling, considering the care with which the court otherwise shepherded this case and the lack of demonstrable prejudice to Paschal. *See Daves v. Payless Cashways, Inc.*, 661 F.2d 1022 (5th Cir. 1981); *Addington v. Farmer's Elevator Mutual Ins. Co.*, 650 F.2d 663 (5th Cir. 1981).

■ The case went to trial on the first amendment theory, Paschal contending that his opposition to directive # 7 was the actual reason for his forced resignation. Under this theory plaintiff has the initial burden of proving that conduct protected by the first amendment was a substantial or motivating factor in his state employer's decision to force his resignation. *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 284, 287, 97 S.Ct. 568, 574, 576, 50 L.Ed.2d 471 (1977). If this burden is met the burden shifts to the defense to prove by a preponderance of evidence that it would have taken the same action regardless of the protected conduct. *Id.* In response to special interrogatories the jury found that plaintiff had not met his initial burden. The district court entered its judgment accordingly and refused Paschal's request for a judgment NOV.

There is no error in the district court's judgment. The evidence in favor of plaintiff was not so overwhelming as to meet

directed verdict or JNOV standards. Assuming that Paschal's opposition to directive # 7 in his own behalf or in his union steward status is protected activity, this activity might present a possible motivating factor for his discharge, but there is no direct evidence linking the activity to the department's decision two and a half years later. Paschal points to his failure to be transferred and to his lack of merit raises as evidence of continuing resentment. This conclusion is contra-indicated, however, by plaintiff's repeated practice of submitting excessive mileage reimbursement requests, by the unsatisfactory work reports, by the department's transferring him out from under a supervisor he did not get along with, and by his being given a retroactive raise. The jury was properly allowed to resolve this conflicting evidence. The judgment in favor of the Dade County Welfare Department must be affirmed.

Claims against Paschal's union and PERC were dismissed before trial. Paschal asserts no error with regard to PERC. Paschal requests a declaratory judgment that the union failed in its state law duty to bargain in his behalf. This relief was never requested of the district court and so is improperly asserted on appeal. With respect to all defendants, the judgment is AFFIRMED.